IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MILDRED CULBRICK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **7:11-cv-3627-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Mildred Culbrick ("Culbrick") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

**I. Procedural History**

Culbrick filed her applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income on July 29, 2009, alleging a disability onset date of April 1, 2008, due to "back, hip, and knee problems." (R. 119-28, 161). After the SSA denied her applications on October 27, 2009, Culbrick requested a hearing. (R. 57-66,72). At the time of the hearing on September 16, 2010, Culbrick was 41 years old, had a high school diploma and a cosmetology license, and past relevant light, unskilled work as a beautician. (R. 49, 156, 166). Culbrick has not engaged in substantial gainful activity since April 1, 2008. (R. 17).

The ALJ denied Culbrick's claim on November 16, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on August 17, 2011. (R. 1-7). Culbrick then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Culbrick had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One. (R. 17). Next, the ALJ acknowledged that Culbrick's severe impairments of "mild degenerative disc disease, L5-S1 with disc protrusion, and arthritis" met Step Two. *Id*. The ALJ then proceeded to the next step and found that Culbrick did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 18). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Culbrick

> has the residual functional capacity [RFC] to perform less than a full range of light work. . . . Specifically, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently; stand, sit or walk up 6 hours in an 8 hour work day; no limits in pushing or pulling; occasionally climb stairs and ramps and is precluded from climbing ladders/ropes/scaffolds; and no other postural, manipulative, visual, communicative or environmental limitations.

Doc. 19.

In light of Culbrick's RFC, the ALJ held that Culbrick was "capable of

performing past relevant work as a beautician." R. 22.  Because the ALJ answered Step Four in the negative, consistent with the law, the ALJ found that Culbrick was not disabled.  (R. 26); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Culbrick asserts that the ALJ erred because he failed to (1) give substantial weight to examining physician Dr. Huey Kidd's opinion, (2) develop a full and fair record, and (3) include all of Culbrick's impairments in the RFC.  Doc. 9 at 5-10.  For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

A.   *The ALJ did not err in assigning "little weight" to Dr. Kidd's opinion*

At the request of the Commissioner, on October 21, 2009, Dr. Huey Kidd completed a consultative examination and reported that Culbrick had a full range of motion and 5/5 strength in her upper and lower extremities, can heel and toe walk, slowly bend and touch her toes, and squat and stand while holding on to the side of the bed.  (R. 258).  Dr. Kidd also reviewed the evidence provided by the Disability Determination Service and, consequently, diagnosed Culbrick with a herniated disc of the lumbar spine with radicular symptoms and opined that Culbrick "will have a very difficult time maintaining employment."  *Id*.  The ALJ gave "little weight" to Dr. Huey Kidd's opinion because Dr. Kidd (1) relied on

Culbrick's "subjective allegations of back pain as well as her statement that she had been diagnosed with 'two herniated discs in her lumbar spine,'" and (2) failed to "find support for his diagnostic impression nor his opinion regarding claimant's employability" because there is no evidence in the record of Culbrick's herniated discs.  (R. 22).

Culbrick contends that the ALJ "erred when he determined Dr. Kidd's opinion was inconsistent with the record as a whole, and the opinion of an examining physician should have been given controlling weight."  Doc. 9 at 5.  This argument is unpersuasive for several reasons.  First, the regulations provide that the Commissioner will give "more weight" to a treating physician who may bring a "unique perspective" that cannot be obtained from the reports of consultative examinations and that treating physicians will receive "controlling weight" when their opinions are supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case."  20 C.F.R. § 404.1527(c)(2).  Consequently, as an examining physician, Dr. Kidd's opinion was not due "controlling weight."

Second, Dr. Kidd's opinion is inconsistent with his clinical notes and observations that Culbrick had full range of motion and 5/5 strength in her upper and lower extremities, and could heel and toe walk, bend and touch her toes, and

squat and stand. (R. 258). Surprisingly, without any supporting diagnostic testing, Dr. Kidd diagnosed Culbrick with a herniated disc and opined that she would have difficulty working. While Culbrick's October 31, 2008 MRI showed "mild degeneration of the L5-S1 disc with a right-sided disc protrusion," it was otherwise "unremarkable" and Culbrick's x-rays were within normal limits. (R. 208, 224). Therefore, Dr. Kidd's report is not supported by his examination notes or objective medical findings.

Third, Dr. Kidd's opinion is inconsistent with the record as a whole. A review of the medical record reveals that Culbrick sought treatment for her hip pain at Ketchum & Dismukes.[1] The first visit during the relevant time period occurred on July 5, 2007, during which the treating physician noted that Culbrick had arthritis pain in her right extremity and prescribed Depo Medrol. (R. 248). Culbrick received the same diagnosis and treatment on September 19, 2007, December 11, 2007, January 28, 2008, July 30, 2008, August 27, 2009, March 8, 2010, and August 13, 2010. (R. 246-48, 272). The treating physician also prescribed Mobic on July 30, 2008, and Darvocet on November 2, 2009. (R. 247, 272).

---

[1] Ketcham & Dismukes treated Culbrick from August 24, 2004 through August 13, 2010. (R. 228-255, 272-73).

During this same period, Culbrick also sought treatment with Dr. Chester Boston, beginning on October 13, 2008, during which Dr. Boston noted "discomfort in the right posterior lumbar area" and observed that Culbrick "walks and stands normally, without limp or instability," has full range of motion in her left and right hips and knees, and that her x-rays were "within normal limits." (R. 224). That same day, Culbrick received an MRI of the lumbar spine that revealed "mild degeneration of the L5-S1 disc with a right-sided disc protrusion which may minimally impinge on the right S1 nerve root. There is also minimal scoliosis. The exam is otherwise unremarkable." (R. 208). Later that month, Dr. Boston evaluated Culbrick and found "some discomfort in the lumbar area and right leg, but it is a little better than before," and normal strength, walk, stance, and range of motion. (R. 225). Finally, on November 19, 2008, Dr. Boston evaluated Culbrick's right hip and leg and noted that "she is improved. She is continuing to work. She has Darvocet and Lyrica, which she has used." (R. 226). Dr. Boston reported normal strength, range of motion, sensation, reflexes, walk, and stance, and that he will reevaluate "the few remaining symptoms" in one month.[2] *Id*.

The next month, on December 16, 2009, Culbrick visited Dr. Colie Crutcher

---

[2]On October 29, 2008, Culbrick visited Whitfield Memorial Hospital for lumbar pain and there are no other treatments notes regarding this visit. (R. 214).

for back pain. (R. 269). During this single visit, Dr. Crutcher noted that Culbrick had spasms, radiculitis, and nerve root irritation, that Culbrick "declined labs," and that her "problems seem to be resolving [with] current treatment." *Id*.

Finally, on March 9, 2011, Culbrick visited Travis Clinic for a clinical pain assessment. Without any mention of any diagnostic tests or clinical observation, Dr. Judy Travis opined that Culbrick has pain that (1) is distracting to adequate performance of daily activities, (2) requires bed rest and/or medication, (3) requires medication and side effects that limit effectiveness due to distraction, inattentiveness, and drowsiness, and (3) is likely to worsen. (R. 274-75). Dr. Travis also noted that Culbrick's treatment were "a little bit" successful, that her medical condition can reasonably be expected to produce such pain, and would cause her to miss work more than three times a month. (R. 275, 278). Dr. Travis reported that Culbrick can (1) sit 2 hours and stand and walk 15 minutes at a time, (2) sit 4 hours and stand 1 hour in an 8 hour work day, (3) occasionally lift up to 10 pounds and never lift over 11 pounds, (4) occasionally carry up to 10 pounds and never carry over 11 pounds, (5) continually use her hands to grasp, frequently push and pull, and occasionally use fine manipulation, (5) occasionally use her feet to push and pull, (6) occasionally stoop, crouch, kneel, crawl, climb and balance, and (7) frequently reach. (R. 276-77). Although Dr. Travis stated that

her diagnosis was confirmed by objective medical findings, she failed to identify them. (R. 278). In other words, this opinion is wholly unsubstantiated by clinical observation and objective medical findings, and, as such, is not due any weight. *See* 20 C.F.R. § 404.1527(c).

Based on this court's review of the medical record, Dr. Kidd's opinion that Culbrick would have difficulty maintaining employment is inconsistent with the record as a whole. While Culbrick has sought treatment for pain in her hip and back, the progress notes reveal a successful treatment plan, that she has continued to work, that her condition has improved, and, importantly, her x-rays and MRI failed to reveal any impairment that could reasonably cause the symptoms Culbrick alleges. Therefore, the ALJ's decision to give Dr. Kidd's opinion "little weight" is supported by substantial evidence.

B.   *The ALJ was not required to further develop the record*

1.   Dr. Kidd

Culbrick contends next that the ALJ failed to fully develop the record because he failed to ask Dr. Kidd for "clarification of his opinion rather than assuming Dr. Kidd based his opinion on Culbrick's subjective complaints alone." Doc. 9 at 6. Unfortunately, where as here, Dr. Kidd's opinion is inconsistent with the record as a whole, including objective medical findings, the ALJ had no

obligation to seek clarification from Dr. Kidd. *See* 20 C.F.R § 404.1527(b)(2), (3), and (4). Moreover, the regulations provide that the Commissioner will seek "clarification from *your* medical source when the report from *your* medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1) (emphasis added).[3] Dr. Kidd was the Commissioner's consulting examiner, rather than Culbrick's medical source. As such, the ALJ had no obligation under the regulations to seek clarification from Dr. Kidd. *Id*. Nonetheless, to the extent Dr. Kidd's inconsistent diagnosis is a conflict, the medical record as a whole resolved that conflict and the report was complete. Therefore, as related to Dr. Kidd, the ALJ did not err in failing to seek clarification of his assessment.

    2.    <u>Culbrick's depression</u>

Without citing any support in the record, Culbrick contends next that the ALJ failed to develop the record regarding Culbrick's "claim for a mental impairment." (R. 181); doc. 9 at 8. There is no evidence in the record indicating

---

[3]On March 26, 2012, the Commissioner revised the regulations and no longer requires re-contacting a claimant's medical source to resolve an inconsistency, although it is available as an option. 20 C.F.R. § 404.1520b(c).

that Culbrick suffers from disabling depression.  In fact, even Culbrick's own testimony belies this contention:

> Q    You're no longer taking the medication for depression, are you?
>
> A    No, ma'am.
>
> Q    And why not?
>
> A    Because I just got off it and like I say, it was making me nauseated.
>
> Q    Does that mean that you no longer suffer from depression?
>
> A    Well, I wouldn't say no longer suffer from it because anytime you can't pay your bills or you, or you - - you know, you need something its depressing.

(R. 44).  Ultimately, Culbrick must meet her burden of proving that she is disabled.  *See* 20 C.F.R. § 416.912(c).  Notwithstanding Culbrick's unsupported claim of depression, the record evidence simply does not support her disability claim, and she failed to articulate why additional medical evidence is warranted to evaluate her claim.  Therefore, the court finds that the ALJ did not err in failing to develop the record regarding Culbrick's alleged depression.

C.    *The ALJ's RFC is supported by substantial evidence*

Finally, Culbrick asserts that the RFC and the vocational expert's hypothetical failed to account for her arthritis in her right hip and knee.  Doc. 9 at 9.  However, the ALJ stated that "[i]n making [the RFC], finding, I have

considered <u>all</u> symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 19) (emphasis added).  Further, the ALJ specifically addressed Culbrick's "back, hip, and knee problems," "constant pain primarily in her lower back that moves into her hip, knee, ankle, and toes," "diagnos[is] with arthritis of the right hip in 2005 and right knee in 2007," "low back pain as of December 2008," "pain in the sciatic area that is radiating down the claimant's right leg," August 2009 complaint of "left hip pain with an additional medication added," and March 2010 "complaints of right hip, leg, knee and ankle pain associated with the claimant's arthritis."  (R. 20-21).  Therefore, Culbrick's contention is unfounded.

As related to the vocational expert's hypothetical, the ALJ directed the vocational expert to the physical RFC assessment (Exhibit 6F), which listed Culbrick's x-rays, MRI results, and exertional limitations, and referenced Dr. Kidd's consultative examination results.  (R. 260-61).  In addition to directing the vocational expert to the physical RFC assessment, the ALJ stated, "Assume that individual has the [RFC] described in 6F. . . .  And you'll particularly note, in addition to the exertional limitations there is a restriction that [she] could only occasionally climb a ramp or stairs and never climb a ladder, rope or scaffolds. Could such an individual perform the claimant's past relevant work?" and the

vocational expert answered, "Yes." (R. 49). Therefore, the ALJ considered Culbrick's impairments in the RFC and vocational expert hypothetical.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Culbrick is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 16th day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE